# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Ocasio,                          :
                                        :
                    Petitioner          :
                                        :
          v.                            :    No. 91 C.D. 2014
                                        :
Workers' Compensation Appeal            :    Submitted:  May 23, 2014
Board (City of Bethlehem),              :
                                        :
                    Respondent          :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE MARY HANNAH LEAVITT, Judge
          HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**                          **FILED:  July 28, 2014**


Joseph Ocasio (Claimant) petitions for review of an Order of the Workers'
Compensation Appeal Board (Board) affirming the Workers' Compensation
Judge's (WCJ) Decision denying his Claim Petition because he did not prove that
he was in the course and scope of his employment when he sustained injuries in an
automobile accident.[1]  The Board also affirmed the WCJ's denial of Claimant's
Penalty Petition.  On appeal, Claimant argues that the WCJ's findings that he was

---

[1] See Section 301(c)(1) of the Workers' Compensation Act, Act of June 2, 1915, P.L.
736, as amended, 77 P.S. § 411(1) (providing that an injury is compensable if it occurs during
the course and scope of the claimant's employment).

not a traveling employee or that Claimant was not on a special mission for the City of Bethlehem (Employer) at the time of his accident are not supported by substantial evidence. Upon review, we affirm.

On March 18, 2009, Claimant was employed as a police officer for Employer and had been in that position for seventeen years. (WCJ Decision, Findings of Fact (FOF) ¶ 6.) Claimant normally worked the night shift, which was 11:00 p.m. to 7:00 a.m. (FOF ¶ 6; Hr'g Tr. at 11, December 20, 2010, R.R. at 11a.) Claimant was assigned to do recruiting work during the day on March 19, 2009 and, as a result, Claimant was assigned to work on March 18, 2009 from 6:00 p.m. to 2:00 a.m. (FOF ¶ 6.) On March 18, 2009, Claimant was driving from his home to the police station to start his 6:00 p.m. to 2:00 a.m. shift when he was involved in a motor vehicle accident. (FOF ¶ 6.) Claimant suffered head trauma from the accident, which has left him unable to perform his duties as a police officer. (FOF ¶ 10.)

On or about April 1, 2009, Claimant filled out an injury report, which was received by Employer on or about April 23, 2009. (FOF ¶ 3.) On May 5, 2009, which was forty-nine days after Claimant's accident, Employer filed a Notice of Compensation Denial (Notice) on the basis that Claimant's injury did not occur within the scope of employment. (FOF ¶¶ 1-2.) On November 12, 2010, Claimant simultaneously filed a Claim Petition alleging that he was injured during the course of his employment, and a Penalty Petition alleging that Employer failed to file the Notice in a timely fashion (together, Petitions). Employer filed answers to Claimant's Petitions denying the material allegations contained therein. Hearings before a WCJ ensued.

The issue before the WCJ was whether Claimant was in the course and scope of his employment when he was injured. In support of the Claim Petition, Claimant testified that: (1) he normally worked the night shift, but was assigned to work 6:00 p.m. to 2:00 a.m. on the night of March 18, 2009 so that he could attend a recruitment fair for the Employer on March 19, 2009; (2) on March 18, 2009 Claimant was going to perform patrol work, and also planned on gathering equipment, loading it into a separate car, and putting gas in that car in preparation for his trip to the recruitment fair the next day; (3) Claimant was driving from his home to the police station in his personal vehicle for the start of his 6:00 p.m. shift when he was involved in a motor vehicle accident; and (4) at the time of the accident he had his police radio on, his police ID badge and gun with him, and was wearing street clothes but had his police uniform in the car. (FOF ¶ 6.) The WCJ found Claimant's testimony to be generally credible. (FOF ¶ 14.)

In opposition, Employer presented the testimony of Stuart Bedics, who formerly worked for Employer in the capacity of Deputy Police Commissioner. Mr. Bedics testified that: (1) "there is no policy that officers are covered for Workers' Compensation while commuting to and from work"; (2) Claimant generally worked the night shift, but his shift was temporarily changed because of his participation in the recruitment fair; (3) at the time of the accident, Claimant was going to work to perform a normal patrol shift the day before he was supposed to attend the recruitment fair; (4) Claimant was allowed to take his gun home with him, but he also had the option to lock it in the armory at the police station when he was not working; and (5) "there is no possibility that [C]laimant would have been called on his radio to report to any official duties while he was outside

3

[Employer's] jurisdiction." (FOF ¶ 8.) The WCJ found Mr. Bedics' testimony to be entirely credible. (FOF ¶ 8.)

Jennifer Swett, Employer's compliance officer, also testified on behalf of Employer. She testified that: (1) "[s]he became aware of Claimant's accident approximately a week after" it occurred; (2) "[o]n or about April 23, 2009, [she] received an injury report that was completed by Claimant on or about April 1, 2009," alleging that his injury was work related; and (3) on April 21, 2009, Claimant emailed another employee regarding his accident, and that employee forwarded the e-mail to Ms. Swett. (FOF ¶ 3.) The WCJ found Ms. Swett to be entirely credible. (FOF ¶ 4.)

Based on the evidence presented, the WCJ determined that Claimant was commuting to a fixed place of work and was not engaged in special circumstances at the time of his injury. (FOF ¶¶ 13-14.) Thus, the WCJ concluded that Claimant did not meet his burden to prove that he was in the course and scope of employment at the time of his injury. (WCJ Decision, Conclusions of Law (COL) ¶ 2.) The WCJ also concluded that Claimant did not prove that Employer failed to timely file the Notice. (COL ¶ 3.) Accordingly, the WCJ denied and dismissed Claimant's Petitions on October 27, 2011. (WCJ Order.)

Claimant appealed and argued before the Board that the WCJ erred by not finding that he was a traveling employee or on a special mission for Employer at the time of his accident. Upon review, the Board concluded that the evidence was insufficient to find that Claimant was a traveling employee because Claimant had a fixed placed of work and was traveling from his home to that fixed place of work

4

when the accident occurred. (Board Op. at 3.) The Board agreed with the WCJ's finding that "simply because Claimant was working a different shift, and intended to spend part of the shift preparing for recruiting duties the following day, did not rise to the level of being on a special assignment for [Employer]." (Board Op. at 3.) Therefore, the Board affirmed the WCJ's denial of Claimant's Petitions. (Board Order.) Claimant now petitions to this Court for review of the Board's Order.[2]

In a claim petition, the burden is on the claimant to prove that he was injured during the course and scope of employment. Olszewski v. Workmen's Compensation Appeal Board (Royal Chevrolet and American Fire and Casualty), 648 A.2d 1255, 1257 (Pa. Cmwlth. 1994). "Whether an employee is acting within the course and scope of his or her employment at the time of injury is a question of law to be determined on the basis of the [WCJ's] findings of fact and is reviewable by this Court." Id. Generally, an employee's injury does not occur in the course and scope of employment if the employee is injured while traveling to or from the employer's premises. Biddle v. Workmen's Compensation Appeal Board (Thomas Mekis & Sons, Inc.), 652 A.2d 807, 809 (Pa. 1995). This is often referred to as the "coming and going rule." Id. at 808. However there are four exceptions to this

---

[2] Our scope of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law occurred, whether Board procedures were violated or whether there was a violation of constitutional rights. Furnari v. Workers' Compensation Appeal Board (Temple Inland), 90 A.3d 53, 58 n.2 (Pa. Cmwlth. 2014). "Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. . . . In performing a substantial evidence analysis, this [C]ourt must view the evidence in a light most favorable to the party who prevailed before the factfinder." Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison), 819 A.2d 164, 168 (Pa. Cmwlth. 2003) (citation omitted).

rule: "1) claimant's employment contract includes transportation to and from work; 2) claimant has no fixed place of work; 3) claimant is on a special mission for employer; or 4) special circumstances are such that claimant was furthering the business of the employer." Setley v. Workmen's Compensation Appeal Board (Kawecki Berylco Industries), 451 A.2d 10, 11 (Pa. Cmwlth. 1982).

Claimant first challenges the WCJ's conclusion that Claimant was not within the course and scope of his employment by asserting that there was substantial evidence to show that Claimant was a traveling employee. An employee is classified as either a stationary employee or a traveling employee, and those employees who fall under the "no fixed place of work" exception are traveling employees. Beaver and Casey, Inc. v. Workmen's Compensation Appeal Board (Soliday), 661 A.2d 40, 42-43 (Pa. Cmwlth. 1995). "We determine whether a claimant is a traveling employee on a case by case basis considering whether the claimant's job duties involve travel, whether the claimant works on the employer's premises or whether the claimant has no fixed place of work." Id. at 42.

Here, the WCJ found that Claimant's fixed place of work was the police station. (FOF ¶ 14.) Claimant argues that, although he must travel to the police station at the start of his shift to pick up a police car, "he would then have no fixed place of work, because his job duties specifically entailed traveling for most of his work shift." (Claimant's Br. at 12.) Claimant analogizes a patrol officer to truck drivers, bus drivers, and contractors who make brief stops at their employer's location, but spend most of their time traveling. Although Claimant maintains that "the similarities are in relevant substance the same, if not identical," (Claimant's Br. at 12), the difference which he does not address is that all the claimants in the

6

compared cases had already stopped at the employer's main location, picked up the employer's vehicle, and started their work travel when injured. See The Baby's Room v. Workers' Compensation Appeal Board (Stairs), 860 A.2d 200, 202 (Pa. Cmwlth. 2004) (employee making a delivery at the end of the workday was injured before he went back to his employer's main location to sign out on a time sheet); Duquesne Truck Service v. Workmen's Compensation Appeal Board (McKeesport Truck Service), 644 A.2d 271, 276 (Pa. Cmwlth. 1994) (employer "assigned [d]ecedent to deliver a load of freight to Selkirk, New York and decedent was killed in an accident en route); Lenzner Coach Lines v. Workmen's Compensation Appeal Board (Nymick), 632 A.2d 947, 948 (Pa. Cmwlth. 1993) (claimant drove an out-of-state tour bus route and was injured during a paid layover day while at the tour destination); Roadway Express, Inc. v. Workmen's Compensation Appeal Board (Seeley), 532 A.2d 1257, 1258 (Pa. Cmwlth. 1987) (employer assigned decedent to deliver a load of freight from Toledo, Ohio to Harrisburg, Pennsylvania, and decedent was killed during a mandatory eight hour layover); Port Authority of Allegheny County v. Workmen's Compensation Appeal Board (Stevens), 452 A.2d 902, 903 (Pa. Cmwlth. 1982) (claimant drove a local bus route and was injured while taking a lunch break). In the present case Claimant had not yet been to Employer's location and had not yet picked up his work vehicle when he was involved in an automobile accident. This factual distinction significantly weakens the persuasiveness of Claimant's comparisons to the foregoing cases.

Secondly, Claimant draws an analogy between police officers and contractors and inspectors who go to temporary job sites away from the employer's location. Claimant argues that his situation is similar to "contractors or inspectors who perform labor or other work at various job sites . . . even if they initially meet

7

at the employers' places of business." (Claimant's Br. at 12.) As support for this assertion, Claimant cites Sheckler Contracting v. Workers' Compensation Appeal Board (Yonek), 697 A.2d 1062 (Pa. Cmwlth. 1997), and Roman v. Workmen's Compensation Appeal Board (Department of Environmental Resources), 616 A.2d 128 (Pa. Cmwlth. 1992).

In Sheckler, a contractor had a temporary assignment at an Air Force base and the employer paid for and arranged his lodging near the base during the week, as well as transportation between the base and the private residence of the job foreman. Sheckler, 697 A.2d at 1063. In Roman, the employee worked as an inspector of various construction sites and the employer paid for him to stay in a hotel near those sites during the week. Roman, 616 A.2d at 129-30. The claimants in Sheckler and Roman were deemed to be traveling employees because their work took them to temporary placements, the employer paid for the travel to and from the job sites, lodging near the job sites, and there was no indication that the claimants were required to report to their employers' main locations before proceeding on their assignments. Given the foregoing facts, Claimant's reliance on these cases is misplaced.

In this matter, Claimant, when acting as a police officer, was limited to the geographical area falling within the jurisdiction of Employer. Mr. Bedics testified that "[Claimant] was coming into our Police Department . . . to perform his normal patrol function, in a patrol capacity. So that evening he would have been in a police uniform driving a police vehicle on patrol within the City of Bethlehem." (Hr'g Tr. at 16, June 23, 2011, R.R. at 114a.) This testimony indicates that although Claimant was required to travel away from the actual police station while

8

working, he was geographically limited to the City of Bethlehem during his eight hour shift. Moreover, unlike the claimants in Sheckler and Roman, Claimant was neither assigned to travel to specific locations during a shift, nor was he paid for travel or required to stay overnight at other locations. Also, unlike Claimant, there is no indication that the claimants in Sheckler and Roman were required to physically check in at their employers' locations at the start of every shift. Accordingly, the fact that Claimant routinely worked within a limited geographical area, was not paid to travel, and went to a fixed location to report in and out of work supports the WCJ's conclusion that Claimant was not a traveling employee, but had a fixed place of employment.

Next, Claimant argues that the WCJ misconstrued the evidence and improperly determined that Claimant was not on a special mission for Employer. Claimant contends that he was on a special mission because: (1) he was on call while driving to work, which was a special circumstance that put him within the course and scope of his employment; (2) he was required to drive to work at an unusual time; and (3) his shift was changed so that he could prepare for the next day's recruitment fair.

First we address Claimant's on call argument. Claimant relies on two pieces of testimony to support the assertion that he was on call during his commute to work. During his testimony, Mr. Bedics was asked if there was "any possibility that [Claimant] would have been called on his walkie-talkie to report to some place official while outside the jurisdiction?" to which Mr. Bedics replied, "[n]o." (Hr'g Tr. at 28, R.R. at 127a.) Claimant notes that "Mr. Bedics did not testify that patrol officers were never asked [to] respond to crimes within Bethlehem while going to

9

or from work." (Claimant's Br. at 14 (emphasis in original).) Claimant also cites his own testimony about an incident that occurred "a few years earlier" in which he responded to a potential crime while driving to work. (Hr'g Tr. at 14, December 20, 2010, R.R. at 14a.) Claimant testified that:

> I was on my way in and there was a security guard - - we have a mall, Westgate Mall, in Bethlehem. Something had occurred. The department wasn't sure yet. The security guard chased the kid across the street into Hanover Township. I had been driving down the street at that point, called it in. I was ordered to take action and remain with the scene. I let them know I was in sweat pants and a tee shirt, and they told me it was an order.

(Hr'g Tr. at 14, R.R. at 14a.) Therefore, Claimant argues, "there is no evidence that the Claimant was **not** required to respond to calls within the geographic confines of Bethlehem even if he had not yet reached the police station." (Claimant's Br. at 15 (emphasis in original).)

Claimant's arguments show that he is relying on the absence of specific testimony to prove that he was on call during his commute to work. Yet, conversely, there was also no evidence that Claimant *was* required to respond to calls on his way into work. Claimant's testimony only showed that, on one occasion, he called his Employer to let them know of an unfolding situation and received direction, not that Employer called him while he was on his way to work and sent him to an incident. Mr. Bedics was never questioned about Employer's on call policy or whether Claimant was on call the morning of the accident. However, Mr. Bedics did testify that there was no existing policy about officers traveling to work in uniforms, (Hr'g Tr. at 20-21, June 23, 2011, R.R. 118a, 120a); that there would be no reason for an officer to have his walkie-talkie on unless he

10

was "working and actually doing a roster assignment," (Hr'g Tr. at 18-19, R.R. at 116a-17a); and that officers had the choice to take their issued weapons home or to leave them locked up at the barracks, (Hr'g Tr. at 21-22, R.R. at 120a-21a). The WCJ evaluated all of these statements and determined that "[t]here is no credible evidence that claimant was required to be on call while on his way to work."[3] (FOF ¶ 15.) The WCJ made this determination based on the collective record evidence, instead of drawing inferences from evidence which was not presented; therefore, the WCJ's findings are supported by substantial evidence.

Next, Claimant argues that because his shift was changed he was commuting to work at a time when he normally would not be on duty; therefore, he was on a special mission for Employer. Claimant cites Peterson v. Workmen's Compensation Appeal Board (PRN Nursing Agency), 597 A.2d 1116 (Pa. 1991), and Bradshaw v. Workmen's Compensation Appeal Board (Bell Hearing Aid Center), 641 A.2d 664 (Pa. Cmwlth. 1994), to argue that "where an employer orders an employee to travel to a specific place to do a specific task, especially one that is not usual to the employee's duties, this is a special mission . . . and the commute is considered to be part of the course and scope of employment." (Claimant's Br. at 16.) However, in Peterson, the claimant's injuries were compensable because claimant was classified as a traveling employee. Peterson, 597 A.2d at 1120-21. Because we have already concluded that Claimant is not a traveling employee, the reasoning in Peterson does not apply.

---

[3] This Court may not reject a WCJ's credibility determination or make new findings of fact based upon the evidence in the certified record, but is limited to determining whether findings of fact are supported by substantial evidence. RAG (Cyprus) Emerald Resources, L.P. v. Workers' Compensation Appeal Board (Hopton), 912 A.2d 1278, 1286-87 (Pa. 2007).

11

In Bradshaw, the claimant was told by her employer to leave her office in order to solicit business. Bradshaw, 641 A.2d at 665. The claimant was leaving one appointment with a potential client and was on her way to see another client, but because her home was on the same route as the next appointment she planned to stop at home for a brief dinner. Id. at 665-66. The claimant was injured in an automobile accident before she reached her home. Id. at 666. This Court held that the claimant was on a special mission because she was following a directive from her employer to "get out of the office and solicit business." Id. at 667. In this instant matter, Claimant was not traveling from one special mission to another as the claimant was in Bradshaw; he was traveling from his home to his place of work and was not instructed to stop anywhere on the way to the police station to pick up items for the recruitment fair. (FOF ¶ 14.) Therefore, Bradshaw is also distinguishable from this case.

Because Peterson and Bradshaw are not applicable in the present instance, that leaves only Claimant's assertion that because his shift was changed and he was commuting to work at an unusual time this created a special mission embarked upon by Claimant when he was driving to work. However, this Court's precedent has previously declined this argument.

In Action, Inc. v. Workmen's Compensation Appeal Board (Talerico), 540 A.2d 1377 (Pa. Cmwlth. 1988), decedent's accident occurred while he was on his way home from an out-of-office meeting. Id. at 1378. This Court articulated the issue as "whether this meeting was part of the regular duties of [decedent's] employment. If it was, then his trip home was indistinguishable from the return trip of any other working day and an injury in the course thereof would not be

12

compensable." Id. at 1379. We held that "the [decedent's] job duties required his attendance at meetings and that these meetings were frequently held at locations other than the office he managed"; therefore, he was not on a special mission and his commute home was not compensable. Id. Similarly, Claimant, in this case, was going to work for the 6 p.m. to 2 a.m. shift in order to patrol, which was his normal job duty. (FOF ¶ 14; Hr'g. Tr. at 32, December 20, 2010, R.R. at 32a.) Since Claimant was going to work at the time of the accident to perform his normal duties as a patrol officer, his commute to work was indistinguishable from his commute to work on any other day. In addition, simply because Claimant was driving to work at a different time does not create a special mission. See Setley, 451 A.2d at 11 (employee driving home after working an abnormal overnight shift was not on a special mission).

Lastly, Claimant argues that he was on a special mission when he was injured because his shift was changed in order for him to prepare for the next day's recruitment fair. However, an employee must actually be in the process of performing the special mission at the time of the injury in order to fall under the exception. In Fonder v. Workers' Compensation Appeal Board (Fox Integrated), 842 A.2d 512 (Pa. Cmwlth. 2004), a delivery driver with a fixed place of employment was driving home from his employer's location in his personal vehicle when he fell asleep at the wheel and was injured in an accident. Id. at 513. The claimant stated that he was going home to shower, sleep, and change clothes before he had to return to work for his next shift. Id. at 515. We stressed that "under the special mission exception, one must be '**on** a mission' for his employer. Claimant, however, asserts only that he was '**between** missions.'" Id. (emphasis in original.)

13

In the present matter, the special mission for Employer - the recruitment fair - was not scheduled to start until the following morning at approximately 9:00 a.m. (Hr'g Tr. at 11, R.R. at 11a.) There was no evidence to suggest that Employer instructed Claimant that his sole task during the 6:00 p.m. to 2:00 a.m. shift was to prepare for the recruitment fair. There was also no evidence that preparations for the job fair would occupy so much of Claimant's time that he would be unable to perform his regular duties during the 6:00 p.m. to 2:00 a.m. shift. Claimant provided an extensive description of the preparation that he would need to undertake throughout his shift. Specifically, he would "have to prepare everything for that following day, all the equipment that has to go, the vehicle that has to go, make sure that [he] has gas . . . [d]uring that shift, I would be loading and preparing all the other equipment, make sure everything's ready." (Hr'g Tr. at 32, R.R. at 32a.) However, the WCJ found that

> [t]he mere fact that claimant intended to prepare for recruiting duties during the course of his work shift is not sufficient to put him in the course and scope of employment. Stated another way, at the time of the accident, claimant was not *actually* preparing for recruiting duty. Rather, he was simply on his way to a fixed place of work to perform routine patrol activities, interspersed with preparations for the following day.

(FOF ¶ 14 (emphasis in original).) Thus, the WCJ properly concluded, based on the evidence, that intermittent preparations for a special mission, which was not going to start until the next day, while performing regular duties did not qualify Claimant for the special mission exception.

Although Claimant suffered serious injuries in an accident while commuting to work, because the WCJ's findings that Claimant does not fall under the "no

14

fixed place of work" or the "special mission" exceptions to the "coming and going" rule are supported by substantial evidence, the WCJ properly denied Claimant's Claim Petition seeking workers' compensation benefits for these injuries. Biddle, 652 A.2d at 808-10. Because Claimant was not successful in his Claim Petition, no penalty can be assessed upon Employer for its alleged failure to timely file the Notice. Brutico v. Workers' Compensation Appeal Board (US Airways, Inc.), 866 A.2d 1152, 1156 (Pa. Cmwlth. 2004) (holding that because claimant's claim petition was denied, no penalties could be awarded).

For the foregoing reasons, the Board's Order is affirmed.

_____
**RENÉE COHN JUBELIRER, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Ocasio,                  :
                                   :
                     Petitioner     :
                                   :
                v.                :   No. 91 C.D. 2014
                                   :
Workers' Compensation Appeal    :
Board (City of Bethlehem),        :
                                   :
                   Respondent    :

# O R D E R

**NOW**, July 28, 2014, the Order of the Workers' Compensation Appeal Board entered in the above-captioned matter is **AFFIRMED.**

_____
**RENÉE COHN JUBELIRER, Judge**